**RUSSELL HANDJIS, ET AL.**                                      **PLAINTIFFS**

**V.**                                 **CAUSE NO. 5:25-cv-00005-DCB-BWR**

**ADAMS COUNTY, MISSISSIPPI, ET AL.**                         **DEFENDANTS**

## SHERIFF TRAVIS PATTEN AND CHIEF STANLEY SEARCY'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON QUALIFIED IMMUNITY

Sheriff Travis Patten and Chief Stanley Searcy of the Adams County Sheriff's Department submit their Memorandum of Authorities in Support of Motion for Judgment on the Pleadings Based on Qualified Immunity as follows:

### INTRODUCTION

On August 29, 2023, Lacey Robinette Handjis ("Decedent") died while housed at the Adams County Jail ("Jail") in Natchez, Mississippi. Even accepting Plaintiffs' First Amended Complaint [23] ("Pleading") as true, Plaintiffs fail to: (1) plausibly allege Sheriff Patten or Chief Searcy personally violated Decedent's constitutional rights; (2) state viable individual capacity claims against them; and (3) plausibly allege facts sufficient to overcome their qualified immunity.

### STANDARD OF REVIEW

I.      **RULES 12(b)(6) and 12(c)**

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc*., 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). "To survive a motion to dismiss under Rule 12(b)(6), the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tilman v. Clarke Cty*., 514 F. Supp. 3d

884, 889 (S.D. Miss. 2021) (quoting *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010)). Courts, however, "will not strain to find inferences favorable to the plaintiffs and [courts] will not accept conclusory allegations,[1] unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641–42 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.,* 365 F.3d 353, 361 (5th Cir. 2004)) (cleaned up).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Great Lakes Dredge*, 624 F.3d at 210. Facial plausibility requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "If there are insufficient factual allegations to raise a right to relief above the speculative level, the claim must be dismissed." *Tate v. Lafayette Cnty. Miss.*, 2012 WL 6454579, at *1 (N.D. Miss. Dec. 13, 2012).

## II.   QUALIFIED IMMUNITY AT THE PLEADING STAGE

Qualified immunity[2] remains available as a defense to a 42 U.S.C. § 1983 action in the Fifth Circuit. *See*, *e.g.*, *Hankins v. Wheeler*, 109 F.4th 839, 845 (5th Cir. 2024). Rule 12

---

[1] "'Conclusory' means expressing a factual inference **without stating the underlying facts** on which the inference is based." *Jenkins v. Rankin Cnty., Mississippi*, 2024 WL 3526903, at *2 (S.D. Miss. July 24, 2024) (quoting *Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024)) (emphasis added).

[2] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The defense "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

consideration of qualified immunity is proper because it "is an *immunity from suit,* and extends beyond just a defense to liability to include all aspects of civil litigation[,]" including discovery. *Jacques v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986) (emphasis in original). When considering a qualified immunity defense, a "court must 'carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery.' " *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (quoting *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019)) (cleaned up).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell*, 472 U.S. at 526. A "plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

"To evaluate whether a government official is entitled to qualified immunity, [courts] conduct a two-prong inquiry[: asking] (1) whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right, and (2) whether the defendant's conduct was objectively reasonable in light of clearly established law." *Harmon v. Dallas Cty., Texas*, 927 F.3d 884, 892 (5th Cir. 2019), *as revised* (July 9, 2019) (quoting *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015)). Courts may address either step first. *Pearson*, 555 U.S. at 236.

Regardless of which step courts address first, they must do so "at the earliest possible stage of the litigation." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam). Significantly, courts "may not permit discovery—'cabined or otherwise'—against immunity-

asserting defendants before it has determined plaintiffs have pleaded facts sufficient to overcome the defense. *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 686). Thus, if a plaintiff cannot overcome qualified immunity, courts must dismiss the plaintiff's claims against the officer(s) retaining immunity.

<u>**PLAINTIFFS' INDIVIDUAL CAPACITY CLAIMS**</u>

## I. PLAINTIFFS MUST PLEAD PERSONAL INVOLVEMENT

A § 1983 "plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.' *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[I]ndividual defendants are entitled to immunity under § 1983 for any asserted actions in which they were not personally involved." *U.S. Tech. Corp.*, 2016 WL 4098609, at *6.

## II. DISTINGUISHING INDIVIDUAL AND OFFICIAL CAPACITY CLAIMS

Based on Plaintiffs' phrasing, it is difficult to determine whether Plaintiffs intend to assert individual capacity claims against Sheriff Patten and Chief Searcy or whether Plaintiffs instead focus primarily on official capacity and municipal liability theories. [23] at 25 (¶157). This distinction matters because qualified immunity only applies to individual capacity claims. The core difficulty with Plaintiffs' Pleading is that their allegations overwhelmingly concern supervisory status, policymaking authority, or official capacity conduct—not individualized conduct by Sheriff Patten or Chief Searcy. Indeed, Plaintiffs expressly allege Sheriff Patten and Chief Searcy "**were acting in an official capacity** of Adams County and/or the Adams County Sheriff's Department

4

while exercising responsibilities pursuant to State law at all times material." *Id*. at 25 (emphasis added). That allegation immediately precedes Plaintiffs' constitutional claims and frames the allegations that follow, suggesting municipal, rather than individual, liability.

The less-than-clear nature of Plaintiffs' Pleading requires additional scrutiny to determine whether Plaintiffs plausibly allege non-conclusory facts showing Sheriff Patten or Chief Searcy personally violated Decedent's constitutional rights. Plaintiffs mention "Sheriff Patten" seven (7) times in their Pleading, and they mention "Sheriff Patton" [sic] six (6) times. Only nine (9) of the thirteen (13) total references to Sheriff Patten are substantive.[3] Plaintiffs mention Chief Searcy eleven (11) times, and only seven (7) of those total references to Chief Searcy are substantive.[4] All but one (1) substantive reference to Chief Searcy mirror Plaintiffs' allegations against Sheriff Patten.[5]

In summary, Plaintiffs' substantive allegations regarding Sheriff Patten and Chief Searcy fall into four (4) general categories:

1.  Sheriff Patten and Chief Searcy supervised and managed the Jail and its employees, and they possessed various operational duties and responsibilities. [23] at 22 (¶146);

2.  Sheriff Patten requested and received a 2022 operational assessment regarding the Jail. *Id*. at 23–24 (¶¶147, 152);

3.  Plaintiffs assert, largely "on information and belief," that Sheriff Patten implemented policies depriving inmates of medical care and that Chief Searcy "condoned and/or carried out" those policies. *Id*. at 24 (¶153); and

4.  Plaintiffs assert Sheriff Patten and Chief Searcy were responsible for hiring, training, supervising, disciplining, and managing Jail personnel and

---

[3] The non-substantive references to Sheriff Patten are in the pleading's title, prefatory paragraph, and designation of parties (x2). [23] at 1, 2 (¶5).

[4] The non-substantive references to Chief Searcy are in the pleading's title, prefatory paragraph, and designation of parties (x2). [23] at 1, 2-3 (¶6).

[5] Plaintiffs assert Sheriff Patten was responsible for policies whereas Chief Searcy was responsible for carrying out polices. [23] at 26 (¶159).

operations, including policies related to medical care. *Id*. at 25–28 (¶¶157-59, 163, 164, 166).

Notably absent from these categories are factual allegations plausibly showing Sheriff Patten or Chief Searcy personally participated in denying Decedent medical care or otherwise directly violated Decedent's constitutional rights. Instead, Plaintiffs repeatedly frame Sheriff Patten and Chief Searcy as supervisors, policymakers, or officials generally responsible for Jail operations and employee conduct. Plaintiffs' reliance on "vicarious" liability further underscores this point.

Plaintiffs allege Sheriff Patten "is liable both directly and vicariously for the actions set forth in this Complaint," and likewise allege Chief Searcy "is liable both directly and vicariously for the actions set forth in this Complaint." *Id*. at 26 (¶¶158–159). Yet, "[t]here is no vicarious or respondeat superior liability of supervisors under section 1983." *Rios v. City of Del Rio, Tex*., 444 F.3d 417, 425 (5th Cir. 2006). Plaintiffs' reliance on "vicarious" liability—although legally defective because neither supervisory officials nor governmental entities may be held liable under § 1983 on a respondeat superior theory—further suggests Plaintiffs focus primarily on official capacity and municipal liability theories rather than individualized conduct by Sheriff Patten or Chief Searcy. *See Monell*, 436 U.S. at 691; *Iqbal*, 556 U.S. at 676.

Nevertheless, Sheriff Patten and Chief Searcy address the claims that Plaintiffs arguably intend to assert against them in their individual capacities. The anchor point for that analysis is Plaintiffs' alleged constitutional violation itself. Plaintiffs' clearest constitutional allegation is the purported failure to provide "reasonable medical care and treatment to pre-trial detainees [who] were in clear and urgent need of medical care." [23] at 24 (¶154). Plaintiffs' more specific constitutional theory is the alleged denial of medical care during the overnight shift to pretrial detainees with mental conditions experiencing "urgent and significant medical needs," which Plaintiffs contend resulted in Decedent's death. *Id*. at 27 (¶163). The question then becomes how,

if at all, Sheriff Patten or Chief Searcy were personally involved in that alleged constitutional violation.

Plaintiffs never allege Sheriff Patten or Chief Searcy personally denied Decedent medical care. Nor do Plaintiffs allege they were aware of Decedent's incarceration, medical condition, or alleged need for emergency medical treatment. Plaintiffs therefore fail to allege Sheriff Patten or Chief Searcy were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," or that they actually drew that inference. *Converse v. City of Kemah, Texas*, 961 F.3d 771, 775 (5th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Instead, Plaintiffs' allegations against Sheriff Patten and Chief Searcy are almost entirely intertwined with conditions-of-confinement and policy-based theories. Under Fifth Circuit law, however, "a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a '**sufficient causal connection**' between the supervisor's conduct and the constitutional violation." *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (emphasis added). Plaintiffs fail to plead non-conclusory factual content plausibly showing that any specific conduct by Sheriff Patten or Chief Searcy caused any alleged constitutional violation.

After sifting through Plaintiffs' Pleading, the only arguably asserted individual capacity theories are:

1. Sheriff Patten implemented unconstitutional policies and/or failed to adopt policies. [23] at 24 (¶153), 27-28 (¶¶164-65);

2. Sheriff Patten and Chief Searcy failed to control, discipline, supervise, and train. *Id.* at 25-26 (¶¶158-59), 27 (¶163); and

3. Sheriff Patten and Chief Searcy's hiring practices were deliberately indifferent. *Id*. at 27 (¶163).

As demonstrated below, Plaintiffs fail to plausibly allege sufficient facts to sustain any of these

theories against Sheriff Patten or Chief Searcy in their individual capacities.

**ARGUMENT**

**I.     PLAINTIFFS' UNCONSTITUTIONAL POLICY CLAIMS ARE IMPLAUSIBLE**

Plaintiffs appear to set forth two unconstitutional policy claims that may be attributable to Sheriff Patten or Chief Searcy in their individual capacities: (1) Sheriff Patten, as the Jail's policymaker, implemented a policy of "not promptly providing reasonable medical care and treatment to pre-trial detainees [who] were in clear and urgent need of medical care[;]"[6] and (2) "these Defendants failed to make necessary changes to policies . . . to ensure that [Decedent] and others in their custody were provided adequate treatment for their serious health needs."[7] *Id*. Sheriff Patten and Chief Searcy address these claims in reverse order below.

**A.     <u>Failure to Adopt Policies</u>**

According to Plaintiffs, Sheriff Patten and Chief Searcy "knew or should have known of[8] **serious and obvious deficiencies** in the policies, practices, procedures, and customs at the Jail related to medical care and observation of pre-trial detainees, generally, such as [Decedent]." *Id*. at 27 (¶164) (emphasis added). Plaintiffs, relying in part on a 2022 assessment of the Jail, further highlight what they consider other "serious deficiencies." In sum, the alleged deficiencies from the report are: (1) no full-time medical staff; (2) inadequate staffing; and (3) a poorly designed control room. *Id*. at 23-24 (¶¶148-151), 27-28 (¶164). It is to these combined deficiencies Plaintiffs assert:

> Despite their knowledge of these serious deficiencies, these Defendants failed to make necessary changes to policies, practices, and procedures or to intervene to ensure that [Decedent] and others in their custody were provided adequate

---

[6] [23] at 24-25 (¶153-54). Plaintiffs do not explicitly plead this specifically against Sheriff Patten. Rather, this quote follows Plaintiffs' conclusory "information and belief" paragraph regarding Sheriff Patten and non-specific policies.

[7] *Id*. at 28 (¶165). "Defendants" as used here applies to all named defendants in this case.

[8] "Knew or should have known" suggests "conclusory statements with no factual basis." *Mateen v. City of Gulfport*, 2024 WL 3733391, at *3 (S.D. Miss. Aug. 8, 2024).

treatment for their serious health needs.

*Id*. at 28 (¶165).

Of initial importance is that Plaintiffs broadly assert several conclusory claims against multiple "Defendants" without specifically asserting who did what.[9] The assertion above follows four (4) paragraphs that not only mention Sheriff Patten and Chief Searcy, but also describe the alleged actions of Officers Collins, Robinson, and Williams. Thus, it is unclear what Plaintiffs attribute to each specific defendant, and the Fifth Circuit does "not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant **unless the connection between the individual defendant and the illegal conduct is specifically pled**." *Cook v. City of Tyler*, 2025 WL 2465293, at *3 (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004)) (brackets omitted; emphasis added). The Court should dismiss Plaintiffs' individual capacity failure-to-adopt policies claim on this ground alone. *See*, *e.g.*, *Harmon*, 2025 WL 2085530, at *4-5.

Nevertheless—while not explicitly pled—Sheriff Patten and Chief Searcy appreciate that Plaintiffs likely intended to assert all policy-based claims against them, not Officers Collins, Robinson, or Williams. Even so, Plaintiffs' failure to adopt policies claim against both Sheriff Patten and Chief Searcy is not viable. "Supervisory officials may be liable under § 1983 for their failure to adopt policies if **that failure causally** results in a constitutional injury." *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022) (emphasis added). "Liability for failure to promulgate policy[, however, . . .] require[s] that the defendant **have acted with deliberate indifference**." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (emphasis added). As *Harmon* states:

liability **only arises** when the official acts, or fails to act, with deliberate

---

[9] "[C]onclusory allegations lumping all 'Defendants' together are insufficient to state a claim [against each defendant] in their individual capacities or to overcome their qualified immunity." *Harmon v. City of Ocean Springs, Mississippi*, 2025 WL 2085530, at *4 (S.D. Miss. July 24, 2025).

indifference, which means disregard for a known or obvious consequence of the official's action. The official must have had actual or constructive notice that the failure to adopt the policy in question would result in the violation of constitutional rights, which typically requires showing notice of a pattern of similar constitutional violations due to deficient policies.

*Harmon*, 2025 WL 2085530, at \*4 (citing *Crittindon*, 37 F.4th at 186) (cleaned up; emphasis added). Plaintiffs fail to plausibly allege facts demonstrating Sheriff Patten or Chief Searcy had actual or constructive notice that any failure to adopt policies would result in the alleged constitutional violations, much less that either of them acted with deliberate indifference to such a risk.

As to the 2022 assessment, Plaintiffs improperly conflate operational or staffing concerns with unconstitutional policies denying overnight medical care. The assessment primarily discusses matters such as inadequate staffing levels, lack of on-site medical personnel, and facility-design concerns. [23] at 23-24 (¶¶148-151), 27-28 (¶164). Plaintiffs, however, fail to plausibly allege how those operational concerns translated into a policy directing officers to deny emergency medical care to pretrial detainees during the overnight shift. Nor do Plaintiffs plausibly allege Sheriff Patten or Chief Searcy implemented such a policy or were deliberately indifferent to a known pattern of similar constitutional violations.

Plaintiffs rely on "[o]n information and belief" allegations to avoid clearly identifying the specific "policies" allegedly at issue in the Jail, leaving their policy allegations wholly conclusory, not to mention vague. *Id*. at 24 (¶153). Moreover, those allegations, without more, fail to sufficiently allege prior incidents used to prove a pattern. "A pattern requires similarity and specificity; 'prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.' " *Peterson v. City of Fort Worth, Tex*., 588 F.3d 838, 851 (5th Cir. 2009) (quoting E*state of Davis ex rel. McCully v. City of North Richland Hills*, 406

F.3d 375, 383 (5th Cir. 2005)) (cleaned up).[10]

Plaintiffs identify no such prior incidents. Consequently, Plaintiffs fail to plausibly allege a pattern of similar constitutional violations, deliberate indifference, or a sufficient causal connection between the operational and staffing deficiencies identified in the 2022 assessment and the alleged constitutional deprivation at issue here. Nor do Plaintiffs plausibly allege Sheriff Patten or Chief Searcy implemented, maintained, or were deliberately indifferent to a policy directing officers to deny emergency medical care to pre-trial detainees with mental conditions during the overnight shift. Plaintiffs therefore fail to plausibly allege a viable failure-to-adopt-policies claim against Sheriff Patten or Chief Searcy in their individual capacities. Because Plaintiffs' Pleading fails to directly or inferentially "support every material point" to sustain this claim, it fails. *See Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009).

**B.      No Implementation of an Unconstitutional Policy**

"When a plaintiff alleges liability on the part of supervisory officials, he must **adequately plead facts showing** that (1) the official 'participated in acts that caused constitutional deprivation' or (2) '**implemented unconstitutional policies** causally related to his injuries.' " *Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025) (quoting *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017)) (emphasis added). Plaintiffs' allegations—especially considering Plaintiffs failure to plausibly allege a viable failure-to-adopt-policies claim—likewise fail to plausibly show that Sheriff Patten or Chief Searcy implemented an unconstitutional policy related to medical care for pre-trial detainees.

While Plaintiffs allege some facts suggesting a policy or custom, Plaintiffs fail to plausibly

---

[10] Under *Peterson*'s framework, Plaintiffs' allegations necessarily narrow the prior incidents to those involving pretrial detainees with mental conditions during the overnight shift. [23] at 26 (¶161); *see also Verastique v. City of Dallas, Texas*, 106 F.4th 427, 432 (5th Cir. 2024).

allege facts showing Sheriff Patten or Chief Searcy implemented, maintained, or were even aware of the alleged de facto policy. Nor do Plaintiffs provide factual content allowing the Court to reasonably infer Adams County maintained a policy directing or causing the denial of emergency medical care to pre-trial detainees with mental conditions during the overnight shift.

On this issue, Plaintiffs principally rely on isolated statements made by Officers Robinson and Collins that Plaintiffs characterize as reflecting an inability to obtain medical care or move detainees during the overnight shift. [23] at 21–22 (¶¶142, 145). But isolated statements by subordinate officers during a single incident do not plausibly establish the existence of a countywide policy or custom, much less a policy implemented or maintained by Sheriff Patten or Chief Searcy. Nor do those statements plausibly demonstrate a pattern of similar constitutional violations sufficient to establish deliberate indifference.

Instead of pleading non-conclusory facts showing Sheriff Patten implemented such a policy, Plaintiffs rely on broad "on information and belief" assertions regarding unspecified "policies, practices, procedures and customs." *Id*. at 24 (¶153). Those conclusory allegations do not cure the absence of factual allegations plausibly showing Sheriff Patten or Chief Searcy implemented an unconstitutional policy causally connected to the alleged constitutional deprivation. Accordingly, the Court should dismiss Plaintiffs' implementation-of-unconstitutional-policy claim against Sheriff Patten and Chief Searcy in their individual capacities.

## II. PLAINTIFFS' "FAILURE TO" AND/OR DELIBERATE INDIFFERENCE CLAIMS FAIL

Plaintiffs' "failure to" and deliberate indifference theories largely rest on generalized allegations regarding Sheriff Patten's and Chief Searcy's supervisory responsibilities rather than factual allegations showing either of them personally violated Decedent's constitutional rights. Plaintiffs repeatedly allege Sheriff Patten and Chief Searcy were responsible for hiring, training,

supervising, disciplining, managing Jail operations, and establishing policies related to medical care. *See*, *e.g.*, [23] at 25–26 (¶¶158–159). But supervisory status and policymaking authority, without more, do not establish individual capacity liability under § 1983.

For example, Plaintiffs allege:

Defendant Sheriff Patten, as the acting Sheriff at all times material, was responsible for the **hiring, training, supervision, discipline, and control**[11] of the deputies and jailers under his command. He was responsible for all actions of staff and employees of the Adams County Sheriff's Department. He was also responsible for the supervision, administration, policies, practices, customs, and operations, both written and unwritten, of the Adams County Jail, including access to medical care. He, at all times material, was the policy maker. **Consequently, he is liable both directly and vicariously for the actions set forth in this Complaint**.

*Id*. at 25-26 (¶158) (emphasis added). Although this paragraph describes Sheriff Patten's duties and responsibilities, it does not plausibly allege how any specific conduct by Sheriff Patten personally caused the alleged constitutional deprivation. Plaintiffs instead infer liability from Sheriff Patten's supervisory role itself.[12]

The closest Plaintiffs come to connecting Sheriff Patten's or Chief Searcy's responsibilities to the alleged constitutional violation is paragraph 163, wherein Plaintiffs alternatively assert that if Jail policies technically allowed overnight medical care, then Sheriff Patten and Chief Searcy necessarily failed in hiring, training, supervising, or disciplining Officers Robinson, Williams, and Collins. *Id*. at 27 (¶163). But this theory merely assumes supervisory liability from the alleged conduct of subordinate officers. In effect, Plaintiffs argue that if a policy existed and subordinate officers failed to follow it, then supervisory officials are automatically liable for inadequate training or supervision. Section 1983 does not permit such a *per se* theory of liability.

---

[11] Sheriff Patten and Chief Searcy place these five activities into two groups: (1) "deliberately indifferent hiring," and (2) the four remaining activities (jointly "failure to supervise and train").

[12] Plaintiffs' assertions against Chief Searcy in paragraph 159 of their Pleading suffers from the same infirmities.

Instead, Plaintiffs' Pleading "must contain either direct allegations or permit properly drawn inferences to **support 'every material point** necessary to sustain a recovery[.]' " *Torch*, 561 F.3d at 384 (5th Cir. 2009) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)) (emphasis added). Plaintiffs fail to satisfy that standard because they do not plausibly allege non-conclusory facts showing how Sheriff Patten's or Chief Searcy's hiring, training, supervision, discipline, or policymaking decisions caused the alleged constitutional violation.

### A.   <u>Failure to Control, Discipline, Supervise, and Train</u>[13]

The Court must dismiss these claims against Sheriff Patten and Chief Searcy in their individual capacities because Plaintiffs fail to plausibly allege the elements required to sustain a supervisory liability claim under § 1983.

> In a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."

*Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir. 1998)).[14] Plaintiffs fail to plausibly allege any of these elements.

**First**, Plaintiffs fail to plausibly allege Sheriff Patten or Chief Searcy personally failed to train, supervise, discipline, or control Officers Collins, Robinson, or Williams. Instead, Plaintiffs rely almost entirely on generalized allegations regarding Sheriff Patten's and Chief Searcy's supervisory duties and responsibilities. But generalized supervisory authority, without more, does not plausibly establish individual capacity liability under § 1983.

---

[13] These claims, depending on how they are construed, also resemble municipal liability claims under *Monell*. Plaintiffs' placement of these allegations alongside repeated assertions that Sheriff Patten was the Jail's "policymaker" and generally "responsible" for Jail operations suggests Plaintiffs may intend to pursue *Monell*-based theories. Nevertheless, because failure-to-train and supervise claims may also proceed against supervisory officials in their individual capacities under limited circumstances, Sheriff Patten and Chief Searcy address those theories herein.

[14] Although decided at summary judgment, *Goodman* highlights Plaintiffs' pleading deficiencies.

**Second**, Plaintiffs fail to plausibly allege a causal connection between any alleged failure to supervise or train and the alleged constitutional violation. Plaintiffs repeatedly assert conclusions regarding inadequate supervision and training, but they fail to plead non-conclusory factual content showing how any specific supervisory decision by Sheriff Patten or Chief Searcy caused the alleged deprivation of medical care.

**Third**, Plaintiffs fail to plausibly allege deliberate indifference. "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Smith*, 158 F.3d at 912 (quoting *Farmer*, 511 U.S. at 837). At best, Plaintiffs generically invoke deliberate indifference throughout their Pleading, but an "allegation that defendants exhibited deliberate indifference [is] merely a legal conclusion, even if it might have been couched as a factual allegation[.]' " *Edmiston v. Borrego*, 75 F.4th 551, 560 (5th Cir. 2023) (quoting *Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014)) (cleaned up).

Moreover, "'a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation' " to establish deliberate indifference. *Goodman*, 571 F.3d at 395 (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). Plaintiffs' Pleading contains no factual allegations demonstrating any pattern of similar failure to train or supervise violations by Sheriff Patten or Chief Searcy.[15]

**Finally**, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Plaintiffs do not identify any specific training

---

[15] To the extent Plaintiffs rely on the narrow "single incident exception," that exception does not apply to individual-capacity claims against supervisory officials. *See Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624–25 n.5 (5th Cir. 2018) (quoting *City of Canton v. Harris*, 489 U.S. 378, 386–92 (1989)).

deficiency, defective training program, or omitted training that plausibly caused the alleged constitutional deprivation. Accordingly, Plaintiffs fail to plausibly allege a viable failure-to-supervise or failure-to-train claim against Sheriff Patten or Chief Searcy in their individual capacities.

### B. Deliberately Indifferent Hiring

Plaintiffs do not explicitly plead a deliberately indifferent hiring claim. Rather, Plaintiffs merely assert Sheriff Patten and Chief Searcy "clearly failed in hiring . . . Officers Robinson, Williams, and Collins."[16] [23] at 27 (¶163). At most, that allegation suggests a claim that Sheriff Patten or Chief Searcy "had a policy of hiring and retaining unqualified officers."[17] *Gomez v. Galman*, 18 F.4th 769, 777–78 (5th Cir. 2021). Regardless of Plaintiffs' intent in advancing this theory, it fails.

Deliberate indifference to the known or obvious consequences of a hiring decision can amount to a constitutional violation on the part of the decision maker, but a "showing of simple or even heightened negligence will not suffice." *Id*. (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). Instead, "[d]eliberate indifference exists 'where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights.'" *Id.* at 778 (quoting *Gros v. City of Grand Prairie*, 209 F.3d 431, 433-34 (5th Cir. 2000)). "There must be a strong connection between the background of the particular applicant and the specific violation alleged." *Gros*, 209 F.3d at 434. Thus, to "show deliberate

---

[16] This claim is in the context of Plaintiffs' *per se* theory of liability based on an if/then structure. *See supra* at 15-16.

[17] Even though this claim primarily aligns with municipal liability, Sheriff Patten and Chief Searcy consider it as raised against them in their individual capacities for dispositive purposes.

indifference, the connection between the background of the individual and the specific violation alleged must be strong, as the plaintiff must show that the hired officer was highly likely to inflict the particular type of injury . . . suffered." *Gomez*, 18 F.4th at 778 (citing *Gros*, 209 F.3d at 434).

Plaintiffs plead no such facts here. Plaintiffs do not identify any background information, hiring deficiency, prior misconduct, or other factual allegations plausibly suggesting Officers Robinson, Williams, or Collins were highly likely to inflict the type of constitutional injury alleged in this case. Nor do Plaintiffs plausibly allege Sheriff Patten or Chief Searcy were deliberately indifferent in hiring or retaining those officers. Ultimately, Plaintiffs offer only a conclusory failure-to-hire allegation untethered to any supporting factual content. Such "[t]hreadbare recitals of the elements of a cause of action" are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Accordingly, the Court should dismiss Plaintiffs' deliberately indifferent hiring claim against Sheriff Patten and Chief Searcy.

## III.     SHERIFF PATTEN AND CHIEF SEARCY RETAIN QUALIFIED IMMUNITY

Once a defendant invokes qualified immunity, **the burden shifts to the plaintiff** to show that the defense is not available. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) (citing *McClendon*, 305 F.3d at 323) (emphasis added). Sheriff Patten and Chief Searcy invoked qualified immunity in their Answer,[18] and they are raising it herein. Thus, Plaintiffs now bear the burden to show qualified immunity does not bar their claims.

To overcome Sheriff Patten's and Chief Searcy's qualified immunity, Plaintiffs must not only show they violated the constitution, but they must also show their actions were objectively unreasonable under clearly established law. Plaintiffs' allegations fail to plausibly establish that Sheriff Patten or Chief Searcy violated the Constitution or federal law, which is not only

---

[18] [30] at 2 (Fourth Defense).

dispositive of their federal claims, but also fails to overcome a significant qualified immunity hurdle. Since Plaintiffs cannot establish any violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Even if Plaintiffs had adequately alleged a constitutional violation, they fail to demonstrate Sheriff Patten's or Chief Searcy's actions were objectively unreasonable under clearly established law. "To satisfy prong two, [Plaintiffs] must point to legal precedent that puts the wrongfulness of [Sheriff Patten's or Chief Searcy's] actions 'beyond debate.' " *Terrell v. Harris Cnty.*, 2024 WL 4446408, at *2 (5th Cir. Aug. 16, 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Significantly, "[t]he Fifth Circuit emphasizes that qualified immunity 'represents the norm, and courts should deny a defendant immunity **only in rare circumstances**.' " *Hillie v. Williams*, 2021 WL 4075390, at *2 (S.D. Miss. Aug. 13, 2021), *report and recommendation adopted*, 2021 WL 4066669 (S.D. Miss. Sept. 7, 2021) (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019)) (cleaned up; emphasis added). Plaintiffs' claims fail to upset the norm, particularly since they cannot overcome their "clearly established law" burden. Here,

> the [rights Sheriff Patten and Chief Searcy are] alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right[s] must be sufficiently clear that a reasonable official would understand that what he is doing violates [those rights]. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"'The dispositive question[, therefore,] is whether the violative nature of **particular conduct** is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Hamilton v. McLemore*, 2021 WL 3719559, at *9

(S.D. Miss. Mar. 31, 2021) (quoting *Mullenix,* 577 U.S. at 12) (emphasis added). To demonstrate which rights are clearly established, the Fifth Circuit requires plaintiffs to "identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the [Constitution]. While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (cleaned up). If Plaintiffs cannot present a clearly established case or body of relevant law that would give Sheriff Patten or Chief Searcy fair notice their alleged actions violated Plaintiffs' clearly established rights, then qualified immunity shields them from Plaintiffs' claims. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).[19]

An officer has fair notice when "the legal principle[s] clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wesby*, 583 U.S. at 63 (quoting *Saucier,* 533 U.S. at 202). "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

Significantly, specific factual allegations regarding Sheriff Patten and Chief Searcy are limited, which immediately hinders Plaintiffs' ability to even describe particular conduct for the qualified immunity analysis. Even so, "[a]brogation of qualified immunity is properly the exception, not the rule[,]" and "[t]he burden of negating the defense lies with the plaintiffs." *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). This burden is already "a heavy one[,]"

---

[19] This is not the "rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *D.C. v. Wesby*, 583 U.S. 48, 64 (2018) (quoting *Brosseau,* 543 U.S. at 199).

and Plaintiffs' deficient facts make it heavier. *Cooley v. City of Waynesboro*, 2017 WL 4156193, at *9 (S.D. Miss. Sept. 19, 2017) (citing *Brown v. Lyford*, 243 F.3d 185, 190 n.7 (5th Cir. 2001)).

"When qualified immunity is raised in a motion to dismiss, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Jackson v. Duff*, 2025 WL 35981, at *4 (S.D. Miss. Jan. 6, 2025) (quoting *Mackey v. Pigott*, 2023 WL 7663300, at *6 (S.D. Miss. Nov. 14, 2023)) (cleaned up). "The crucial question is whether the complaint pleads facts that, **if true**, would permit the inference that Defendants are liable under Section 1983, and would overcome their qualified immunity defense." *Id*. (quoting *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023)) (cleaned up; emphasis added). Again, Plaintiffs bear the burden "to show that the defense is not available." *Trent*, 776 F.3d at 376. Plaintiffs cannot meet this burden because they have not pled non-conclusory facts, "which, if true, would overcome the defense of qualified immunity." *Backe*, 691 F.3d at 648.

Sheriff Patten and Chief Searcy therefore retain their cloaks of qualified immunity, and the Court must dismiss Plaintiffs' individual capacity claims against them with prejudice.

**CONCLUSION**

Plaintiffs' First Amended Complaint fails to plausibly allege viable individual capacity claims against Sheriff Patten or Chief Searcy. Although Plaintiffs repeatedly describe Sheriff Patten's and Chief Searcy's supervisory duties, policymaking authority, and general responsibility for Jail operations, Plaintiffs do not plausibly allege either of them personally participated in denying Decedent medical care, was aware of Decedent's alleged medical emergency, or implemented an unconstitutional policy causally connected to the alleged constitutional deprivation. Instead, Plaintiffs rely on conclusory "on information and belief" assertions, impermissible vicarious-liability theories, and generalized allegations regarding supervisory

20

responsibility.

Plaintiffs likewise fail to plausibly allege the elements necessary to sustain their policy-based, failure-to-adopt-policies, failure-to-train, failure-to-supervise, or deliberately indifferent hiring theories. Plaintiffs identify no pattern of similar constitutional violations, no specific training deficiency, no facts plausibly showing deliberate indifference, and no non-conclusory factual allegations establishing a sufficient causal connection between Sheriff Patten's or Chief Searcy's conduct and the alleged constitutional violation. The factual allegations necessary to move Plaintiffs' individual capacity claims beyond the speculative level simply are not present in Plaintiffs' First Amended Complaint.

Even if Plaintiffs had plausibly alleged a constitutional violation—which they have not—Plaintiffs nevertheless fail to overcome qualified immunity. Plaintiffs do not identify clearly established law placing the alleged unlawfulness of Sheriff Patten's or Chief Searcy's conduct "beyond debate" under the particular circumstances alleged here. Nor do Plaintiffs plausibly allege facts showing either Defendant acted objectively unreasonably in light of clearly established law.

Accordingly, and for all reasons stated herein and in Sheriff Patten and Chief Searcy's Motion for Judgment on the Pleadings Based on Qualified Immunity, Sheriff Travis Patten and Chief Stanley Searcy respectfully request the Court dismiss all individual capacity claims asserted against them, if any, with prejudice.

**DATE:**      **May 15, 2026.**

Respectfully submitted,

**SHERIFF TRAVIS PATTEN AND CHIEF STANLEY SEARCY**

BY:     /s/*Lance W. Martin*
           One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
LANCE W. MARTIN (MSB #105203)
Butler Snow LLP
1020 Highland Colony Pkwy, STE 1400
Ridgeland, MS 39157
Tel. 601-948-5711
Fax 601-985-4500
will.allen@butlersnow.com
lance.martin@butlersnow.com

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned of Butler Snow LLP, one of the attorneys for Sheriff Travis Patten and Chief Stanley Searcy, hereby certify that on this day I electronically filed the foregoing Memorandum of Authorities in Support of Motion for Judgment on the Pleadings Based on Qualified Immunity with the Clerk of the Court using the ECF system, which shall give notice to all counsel of record including, but not limited to:

> Eric Dillon (MSB No. 100958)
> ERIC DILLON LAW FIRM, PLLC
> 216 West Jackson Street
> Ridgeland, Mississippi 39157
> 601.906.5336
> eric@ericdillonlawfirm.com
>
> Jonathan P. Barrett (MSB No. 102426)
> BARRETT LAW, PLLC
> 121 Colony Crossing, Suite D
> Madison, Mississippi 39110
> 601.790.1505
> jpb@barrettlawms.com
> *Attorneys for Plaintiff*

The 15th day of May 2026.

/s/*Lance W. Martin*
OF COUNSEL