IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RUSSELL HANDJIS, INDIVIDUALLY, AND ON BEHALF
OF THE WRONGFUL DEATH BENEFICIARIES OF
LACEY ROBINETTE HANDJIS; AND
SHERRY HANDJIS, ON BEHALF OF JACK HANDJIS
AND TYLER HANDJIS, MINOR CHILDREN OF
LACEY ROBINETTE HANDJIS                                    PLAINTIFFS

VERSUS                              CAUSE NO. 5:25-cv-00005-DCB-BWR

ADAMS COUNTY, MISSISSIPPI; ADAMS COUNTY
MISSISSIPPI SHERIFF'S DEPARTMENT; SHERIFF
TRAVIS PATTEN; CHIEF STANLEY SEARCY; OFFICER
WANILA WILLIAMS; OFFICER VATISHA COLLINS;
OFFICER CLEOPHUS ROBINSON; JOHN DOES 1-5; AND
ABC CORPS. 6-10                                           DEFENDANTS

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS [ECF NO. 43] AND DENYING
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 90]**

---

## I.    INTRODUCTION

This action arises from the death of Lacey Robinette Handjis ("Decedent"), a pretrial detainee who died on August 29, 2023, while held in a holding cell at the Adams County Jail in Natchez, Mississippi. Russell Handjis, individually and on behalf of the wrongful-death beneficiaries of Decedent, and Sherry Handjis, on behalf of Decedent's minor children, Jack Handjis and Tyler Handjis, collectively ("Plaintiffs"), bring claims under 42 U.S.C. § 1983 and Mississippi state law, alleging that the individual Defendants were deliberately indifferent to Decedent's serious

medical needs in violation of the Fourteenth Amendment. [ECF No. 23] at 25–31.

Two motions are before the Court, each seeking judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. The first is a Motion for Judgment on the Pleadings Based on Qualified Immunity filed by Defendants Officer Wanila Williams ("Williams"), Officer Vatisha Collins ("Collins"), and Officer Cleophus Robinson ("Robinson"), collectively ("Officer Defendants"). [ECF No. 43]. The second is a Motion for Judgment on the Pleadings Based on Qualified Immunity filed by Defendants Sheriff Travis Patten ("Patten") and Chief Stanley Searcy ("Searcy"), collectively ("Supervisory Defendants"). [ECF No. 90].

Having considered the motions, the parties' submissions, the applicable law, and being otherwise fully apprised on the issues, for the reasons set forth below, the Court finds that both motions must be denied to the extent they seek dismissal of Plaintiffs' federal claims on qualified-immunity grounds. Taking the well-pleaded allegations of the First Amended Complaint as true, and drawing all reasonable inferences in Plaintiffs' favor, the Complaint plausibly alleges that Decedent was deprived of her clearly established Fourteenth Amendment right to adequate medical care. That conclusion applies both to the Officer Defendants, who allegedly observed Decedent's medical emergency, and to the Supervisory Defendants, who allegedly had documented notice of

systemic deficiencies in the facility's provision of medical care, yet failed to remedy them. The Officer Defendants' Motion [ECF No. 43] is granted in part. Plaintiffs' state-law negligence and gross-negligence claims are barred by the Mississippi Tort Claims Act. Plaintiffs' official-capacity claims are dismissed as duplicative of their claims against Adams County. In all other respects, the motions [ECF Nos. 43 and 90] are denied.

## II.    BACKGROUND

In March 2022, at Patten's request, Kathryn A. Bryan of Detention Operations, LLC, prepared an Operational Assessment of the Adams County Jail. [ECF No. 23] at 23; see Operational Assessment [ECF No. 23-5]. The assessment reviewed, among other subjects, the Jail's conditions of confinement, safety and security, and inmate supervision. [ECF No. 23-5]. In the section addressing medical and mental-health services, the assessment found that "[t]here are still no medical staff on duty at any time in the jail" and observed that, under those circumstances, "the first hurdle that the Sheriff's Office and/or County would perhaps have to overcome is the utter lack of in-house medical staff, leaving medical decisions/diagnoses to unqualified detention officers." Id. at 11. The assessment described the control room as the most poorly designed the assessor had encountered and further found that the Jail's staffing level of four officers per shift was "insufficient." Id. at 14, 18. In its conclusion, the

3

assessment stated: "It is my unequivocal position that operations in the current facility are untenable and not able to be relieved or significantly mitigated by minor changes in operations." Id. at 19. Plaintiffs allege that none of the significant deficiencies the assessment identified were corrected between its issuance in March 2022 and Decedent's death on August 29, 2023. [ECF No. 23] at 24.

On August 28, 2023, the Adams County Chancery Clerk accepted a mental-hold affidavit directing that Decedent be taken into custody and held pending a commitment hearing set for the following afternoon. [ECF No. 23] at 5-6; see Order to Hold [ECF No. 23-1]. Decedent was transported to the Adams County Jail and placed in a holding cell at approximately 3:05 p.m. [ECF No. 23] at 7.

Over the course of the evening on August 28, 2023, Decedent's condition deteriorated. She repeatedly called for officers, stated that her heart was racing, and asked that 911 be called. Id. at 8. Robinson responded, "I can't." Id. Beginning at approximately 10:53 p.m., Decedent vomited blood on three occasions within a span of several minutes, filling the holding-cell sink with blood that remained visible for a period of approximately twenty-one minutes. Id. at 10-12. In the early morning hours of August 29, 2023, Lacey defecated onto the floor of the holding cell, and at approximately 2:12 a.m., Officer Williams observed her lying in the vomit and feces. Id. at 17.

4

Officers Collins and Williams observed these events on the control room surveillance monitor and took no action.[1] Robinson observed Decedent's condition on the monitor in the control room and stated to Williams that Decedent had "a serious problem" and that he had "never seen anyone wallowing in their shit." Id. at 18. Williams left the control room at approximately 2:51 a.m. After Williams left the control room Robinson moved his chair out of camera view and slept until approximately 5:00 a.m. Id. Decedent was discovered dead the following morning. Id. at 19. An independent autopsy determined the cause of death to be hyponatremic dehydration. [ECF No. 23] at 19; see Independent Autopsy Report [ECF No. 23-3].

In recorded interviews conducted after Decedent's death, the Officer Defendants offered their impressions of Decedent's Condition. Collins stated that Decedent was "just like a mental patient" and that "we get mental patients all the time, and you just don't know what you [are going to] get with these people." [ECF No. 23] at 20. Collins further stated that officers are "not allowed to move people at nighttime." Id. at 21. Robinson stated that he had told Decedent she "would have to check with morning

---

[1] The surveillance-video exhibits (holding cell, control room, and hallway) and the recorded officer interviews were conventionally filed on physical media held in the Clerk's Office and are not electronically paginated. See [ECF No. 49]. Where this Order refers to their content, it cites the corresponding descriptive allegations of the First Amended Complaint. [ECF No. 23].

shift because [the night shift officers] could not get her a doctor" that night. Id. at 22; see Robinson Incident Report [ECF No. 23-4].

Plaintiffs initiated this action on January 10, 2025. [ECF No. 1]. On June 13, 2025, Plaintiffs filed the operative First Amended Complaint, which added the Officer Defendants and Corporal Michael Kracek as defendants and attached several exhibits, including a March 2022 Operational Assessment of the Adams County Jail. [ECF No. 23]; [ECF No. 23-5]. On June 26, 2025, Plaintiffs voluntarily dismissed Defendants Charles Clemmons, Brenda Russell, Sharta Tyms, and Michael Kracek without prejudice, leaving Patten, Searcy, and the three Officer Defendants as the remaining individual Defendants. [ECF No. 28].

Supervisory Defendants answered the First Amended Complaint and asserted qualified immunity on June 27, 2025. [ECF No. 30] at 2. Collins and Robinson answered and asserted qualified immunity on August 18, 2025, [ECF No. 34] at 1, and Williams answered and asserted qualified immunity on November 5, 2025. [ECF No. 42] at 1. Officer Defendants moved for judgment on the pleadings on November 7, 2025. [ECF No. 43]. Supervisory Defendants moved for judgment on the pleadings based on qualified immunity on May 15, 2026. [ECF No. 90].

## III.  CLAIMS

The First Amended Complaint asserts a claim under 42 U.S.C. § 1983 for violation of Decedent's Fourteenth Amendment right to adequate medical care as a pretrial detainee, together with pendent state-law claims. [ECF No. 23] at 25–32. The federal claim is pleaded in two forms, each directed at a different set of Defendants and each governed by a distinct legal standard.

### A. CLAIMS AGAINST OFFICER DEFENDANTS

As to the Officer Defendants, Plaintiffs assert a claim for unconstitutional episodic acts or omissions. [ECF No. 23] at 28–31. Plaintiffs allege that Williams, Collins, and Robinson were assigned to monitor Decedent on the overnight shift, that each observed her medical distress through direct interaction and the surveillance feed, and that each failed to summon or provide medical care despite that awareness. [ECF No. 23] at 29–31. Plaintiffs also assert state-law claims against the Officer Defendants for negligence and gross negligence. [ECF No. 23] at 31–32.

### B. CLAIMS AGAINST SUPERVISORY DEFENDANTS

As to the Supervisory Defendants, Plaintiffs assert a claim for unconstitutional conditions of confinement. [ECF No. 23] at 25–28. Plaintiffs allege that Patten, as the Jail's final policymaker, and Searcy, as the Jail's administrator, maintained policies, practices, and customs that deprived pretrial detainees

7

of adequate medical care, and that they were deliberately indifferent to the known and documented risk in the 2022 Operational Assessment. [ECF No. 23] at 24-28. Plaintiffs plead the conditions of confinement theory principally as the result of an unconstitutional custom and a failure to adopt adequate medical-care policies. [ECF No. 23] at 27-28. In the alternative, Plaintiffs plead that if the Jail's policies did permit overnight medical care, then the Supervisory Defendants failed to train, supervise, and discipline the Officer Defendants who withheld it. [ECF No. 23] at 27.

IV.   **LEGAL STANDARD**

### A. FEDERAL RULE OF CIVIL PROCEDURE 12(c)

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008). To survive such a motion, a "'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the

plaintiff." In re Great Lakes Dredge & Dock Co., 624 F.3d 201, 210 (5th Cir. 2010). The Court need not, however, accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" Id01. (quoting Ferrer v. Chevron Corp., 484 F.3d 776, 780 (5th Cir. 2007)); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### B. QUALIFIED IMMUNITY

42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives another of rights secured by the Constitution and laws of the United States. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994)(quoting Baker v. McCollan, 443 U.S. 137, 144 & n.3 (1979)). To state a claim, a plaintiff must "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000). Vicarious liability is unavailable in § 1983 actions, therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

9

Qualified immunity shields government officials from individual-capacity damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is "an *immunity from suit* rather than a mere defense to liability," and is "effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original). Once a defendant properly invokes qualified immunity, the burden shifts to the plaintiff to demonstrate that the defense does not apply. Kovacic v. Villarreal, 628 F.3d 209, 211 (5th Cir. 2010). At the pleading stage, the plaintiff must "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012).

The qualified-immunity inquiry proceeds in two steps. The Court asks (1) whether the facts alleged, taken in the light most favorable to the plaintiff, establish the violation of a constitutional right, and (2) whether that right was clearly established at the time of the challenged conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). A right is clearly established when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202.

10

The Court may address the two prongs in either order and need not proceed to the second if the first is not satisfied. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

### C. PRETRIAL-DETAINEE MEDICAL CARE

Decedent was a pretrial detainee, therefore, her right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996). A pretrial detainee's claim that she was denied constitutionally adequate medical care takes one of two forms, and the form of the claim dictates the governing standard. Where the claim attacks a particular act or omission of one or more individual officials, it is characterized as an "episodic act or omission" claim and is governed by a standard of subjective deliberate indifference. Id. at 643, 647–48. Where, by contrast, the claim attacks the detainee's general conditions of confinement (the jail's rules, restrictions, policies, or customs) it is evaluated under the standard set forth in Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009), which asks whether the condition or practice was reasonably related to a legitimate governmental objective. The claims against Officer Defendants fall in the episodic acts and omissions category; the claims against the Supervisory Defendants challenge the conditions of Decedent's confinement.

11

### D. THE MISSISSIPPI TORT CLAIMS ACT

The Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1 et seq., provides the exclusive remedy against a governmental entity and its employees for acts or omissions occurring within the course and scope of their employment. The MTCA provides that "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [o]f any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution." Miss. Code Ann. § 11-46-9(1)(m).

### E. OFFICIAL CAPACITY CLAIMS

An official-capacity suit against a government employee "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Where the claims against an official in his official capacity seek the same relief as claims against the governmental entity itself, the official-capacity claims may be dismissed as duplicative. Romero v. Universal City, 256 F.3d 349, 355 (5th Cir. 2001).

## V.   DISCUSSION

### A. OFFICER DEFENDANTS

The Officer Defendants seek judgment on the pleadings on three grounds: that Plaintiffs' state-law claims are barred by the MTCA;

12

that any official-capacity claims are duplicative of Plaintiffs' claims against Adams County; and that the Officer Defendants are entitled to qualified immunity on Plaintiffs' federal claim because the First Amended Complaint fails to allege that any officer subjectively knew of and disregarded a substantial risk of serious harm to Decedent. [ECF No. 44] at 13–33. The Court addresses each ground in turn. The first two are meritorious; the third is not.

### 1. Plaintiffs' State-Law Claims Against Officer Defendants are Barred by the Mississippi Tort Claims Act.

The Officer Defendants first contend that Plaintiffs' negligence and gross-negligence claims are barred because Decedent was an inmate of the Adams County Jail when those claims arose. [ECF No. 44] at 13. The Court agrees. The MTCA provides that a governmental entity and its employees acting within the course and scope of their employment "shall not be liable for any claim . . . [o]f any claimant who at the time the claim arises is an inmate of any detention center, jail, . . . or other such institution." Miss. Code Ann. § 11-46-9(1)(m). The Mississippi Supreme Court has squarely held that this provision bars a wrongful-death action brought by the beneficiaries of a detainee who dies in custody, because the beneficiaries "stand in the position of their decedent" and are entitled only to the remedy the decedent could have pursued

13

had she survived. Webb v. DeSoto Cnty., 843 So. 2d 682, 684-85 (Miss. 2003).

The fact that the Officer Defendants' alleged conduct is characterized in Count III as "gross negligence" and "willful, wanton, and reckless disregard," [ECF No. 23] at 32, does not alter the analysis. The Mississippi Supreme Court has held that § 11-46-9(1)(m) bars "any non-intentional/non-criminal acts" committed against an inmate by jail employees acting within the course and scope of their employment. Lee v. Thompson, 859 So. 2d 981, 987 (Miss. 2003). Nor does Decedent's status as a pretrial detainee, rather than a convicted prisoner, remove her from the statute's reach; the Mississippi Supreme Court has applied § 11-46-9(1)(m) to a pretrial detainee held on pending charges. Id. at 984-87.

Decedent was clearly a detainee in the custody of the Adams County Jail at the time this cause of action accrued, therefore, Mississippi Code Annotated § 11-46-9(1)(m) controls, and would have afforded Decedent no remedy.  This bars the derivative claims of her beneficiaries.  Webb, 843 So. 2d at 685.

Plaintiffs' state-law claims against the Officer Defendants are accordingly dismissed.

### 2. Plaintiff's Official-Capacity Claims Against the Officer Defendants are Dismissed as Duplicative.

The Officer Defendants next contend that, to the extent Plaintiffs assert claims against them in their official

14

capacities, those claims are duplicative of Plaintiffs' claims against Adams County. [ECF No. 44] at 14. An official-capacity claim against a government employee is "another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55.

Here, Plaintiffs have named Adams County as a defendant, [ECF No. 23] at 3. Because the official-capacity claims against the Officer Defendants seek the same relief as the claims against Adams County, they are dismissed as duplicative. Romero, 256 F.3d at 355.

### 3. Plaintiffs Plausibly Allege That Each Officer Defendant was Deliberately Indifferent to Decedent's Medical Needs.

The Officer Defendants' principal argument is that they are entitled to qualified immunity because the First Amended Complaint fails to allege that any officer subjectively knew that Decedent faced a substantial risk of serious harm. [ECF No. 44] at 15–32. To prevail on an episodic-act claim, a pretrial detainee must show that the defendant official acted with subjective deliberate indifference; that is, that the official "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." Hare, 74 F.3d at 650; see also Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 755 (5th Cir. 2001). The official "must both be aware of facts from which the inference could be drawn that a substantial

15

risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent" do not rise to the level of subjective deliberate indifference. Domino, 239 F.3d at 756; Alton v. Tex. A&M Univ., 168 F.3d 196, 201 (5th Cir. 1999). Despite this, the "'official's knowledge of a substantial risk of harm may be inferred if the risk was obvious.'" Kelson v. Clark, 1 F.4th 411, 419 (5th Cir. 2021) (quoting Easter v. Powell, 467 F.3d 459, 463-64 (5th Cir. 2006)). Each defendant's entitlement to immunity must be assessed individually. See Hare, 74 F.3d at 643 ("[t]he proper inquiry is whether the official had a culpable state of mind in acting or failing to act.").

Taken in the light most favorable to Plaintiffs, the well-pleaded allegations satisfy this standard as to each Officer Defendant. The allegations supply both the requisite knowledge and the requisite disregard.

First, as to Robinson, the First Amended Complaint alleges that he spoke with Decedent face to face at the holding-cell door and heard her state, "I am sick. I am dying in here. My heart is racing. My mouth is numb. I am throwing up blood." [ECF No. 23] at 13. He heard her ask him to call 911, and he refused, telling her, "I can't." Id. He then returned to the control room, announced to his fellow officers that "[s]he says she is dying," and resumed

16

his seat. Id. He later remarked that Decedent had "a serious problem," id. at 18, yet took no step to obtain care and ultimately slept through the remainder of his shift. Id. These allegations permit the inference that Robinson both perceived and drew the inference of a substantial risk of serious harm and then disregarded it at this stage.

Second, as to Williams and Collins, the First Amended Complaint alleges that each observed Decedent vomit blood on the control-room surveillance monitor and took no action. Id. at 11–12. Williams is further alleged to have looked through the port of the holding-cell door at approximately 2:12 a.m., observed Decedent lying nude on the floor in her own feces—a scene the pleadings describe as one of obvious medical distress—and walked away without attempting to communicate with her or render aid. Id. at 17.

Collins is alleged to have signed into the control room while Decedent's blood remained visible in the holding-cell sink and, in the hallway, and to have taken no action in response. Id. at 11–12. A detainee who announces that she is dying, vomits blood in view of the officers charged with monitoring her, and is left lying in her own waste presents a risk of serious harm that is not merely a matter of negligent inaction. Kelson, 1 F.4th at 419; see also Ford v. Anderson Cnty., 102 F.4th 292, 314 (5th Cir. 2024) (a pretrial detainee's "pleas for help, vomiting of a black or brown

17

substance, inability to ambulate without assistance, and medical observation status present[ed] . . . facts indicating hospitalization was necessary.").

The Officer Defendants resist this conclusion principally by analogy to Carmona v. City of Brownsville, 126 F.4th 1091 (5th Cir. 2025), and Robinson v. Midland County, 80 F.4th 704 (5th Cir. 2023). [ECF No. 44] at 16–29. Neither case supports dismissal here. Indeed, Carmona confirms the opposite. In Carmona, the Fifth Circuit affirmed qualified immunity for officers who failed to obtain care for an arrestee who died of internal bleeding from a lacerated liver, because the arrestee's injuries were "not visually apparent" and she never "requested medical care." Carmona, 126 F.4th at 1097–99. The court explained, in depth, the limit of its holding: "Arguably, had Plaintiff alleged Carmona complained of abdominal pain or clutched her abdomen, such conduct would have allowed an inference that Officers were aware she was suffering from internal injuries." Id. at 1099.

Here, Decedent did not suffer from a concealed, internal injury that manifested no outward sign. She told the Officer Defendants, in words, that she was throwing up blood, that her heart was racing, and that she was dying; she vomited blood that remained visible in the sink and the hallway; and she begged for medical care and for 911 to be called repeatedly throughout the night. [ECF No. 23] at 9–16. Where the plaintiff in Carmona could

18

not allege that the officers knew of a hidden injury, Plaintiffs here allege the very conduct that Carmona identified as sufficient to permit the inference of subjective awareness: complaints of specific symptoms and express requests for care. Carmona, 126 F.4th at 1099.

Likewise, Robinson can be distinguished from the case at bar. Robinson, 80 F.4th at 704. Whereas the jailor in Robinson ensured that an asthma-suffering pretrial detainee had his prescribed inhaler, the Officer Defendants here provided no medical assistance whatsoever. Their provision of a water cup to Decedent cannot, in good conscience, be equated to prescription medication.

The Officer Defendants also invoke their post-incident statements that they believed Decedent was "just" a "mental patient" acting as mental patients act, contending that these statements establish that they subjectively perceived no medical emergency. [ECF No. 44] at 27–29. At the pleading stage, however, the Court must accept Plaintiffs' well-pleaded allegations and draw all reasonable inferences in their favor. Great Lakes Dredge, 624 F.3d at 210. Whether the Officer Defendants in fact drew the inference of a substantial risk, or instead genuinely and reasonably believed Decedent faced no medical danger, is a question that cannot be resolved against Plaintiffs on the pleadings, particularly where the same pleadings allege that Robinson himself acknowledged Decedent had "a serious problem" and announced that

19

"[s]he says she is dying." [ECF No. 23] at 13, 18. Under these circumstances, an official's self-serving characterization of his own state of mind does not entitle him to judgment where the well-pleaded facts permit the opposite inference.

Finally, the Officer Defendants contend that the surveillance video, incorporated into the pleadings by reference, "blatantly contradicts" Plaintiffs' allegations and should be credited over them. [ECF No. 44] at 30–31 (citing Anderson v. Estrada, 140 F.4th 634, 642 (5th Cir. 2025)). The principle the Officer Defendants invoke is a narrow one: a court may credit video over the pleadings only where the video "'blatantly contradict[s]'" the plaintiff's account, such that no reasonable factfinder could credit that account. Anderson, 140 F.4th at 642 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). The parties dispute what the footage shows. Plaintiffs contend, among other things, that the Officer Defendants' own briefing misattributes a control-room statement and omits any reference to the seventy-five-minute period during which Decedent's condition most severely deteriorated. [ECF No. 54] at 29–32. Where the parties genuinely dispute what a video depicts, the video does not "blatantly contradict" the pleadings, and the plaintiff's well-pleaded allegations control. Anderson, 140 F.4th at 642.

Accepting the well-pleaded allegations as true, Plaintiffs have plausibly alleged that each Officer Defendant knew of and

20

disregarded a substantial risk of serious harm to Decedent. The first prong of the qualified-immunity inquiry is satisfied.

### 4. Decedent's Right was Clearly Established.

The Officer Defendants argue in the alternative that, even if Plaintiffs allege a constitutional violation, they cannot identify clearly established law placing the unlawfulness of the officers' conduct beyond debate. [ECF No. 44] at 32–33. The argument fails. As of August 2023, it was clearly established in this Circuit that a pretrial detainee has a Fourteenth Amendment right not to have her serious medical needs met with deliberate indifference by the officials responsible for her confinement. Hare, 74 F.3d at 650. The Fifth Circuit had long held that an official who "'refused to treat [a detainee], ignored [her] complaints, . . . or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs'" violates that right. Sims v. Griffin, 35 F. 4th 945, 951 (5th Cir. 2022) (quoting Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006)).

Decedent's right was clearly established at the requisite level of particularity. In Sims, the Fifth Circuit denied qualified immunity to jail officials who ignored a pretrial detainee who cried out for help while vomiting and visibly deteriorating in his cell, holding that such conduct violated clearly established law. Sims, 35 F.4th at 950-51. In Kelson, the court denied qualified immunity where officers ignored a detainee's complaints of a head

injury, reaffirming that an "official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." Kelson, 1 F.4th at 419. A reasonable officer in the position of Williams, Collins, or Robinson would have understood that ignoring so obvious a medical emergency was unlawful. Saucier, 533 U.S. at 202.

Because Plaintiffs have plausibly alleged a violation of a clearly established right, the Officer Defendants are not entitled to qualified immunity at the pleading stage. Their Motion is denied as to Plaintiffs' federal claim.

### B. SUPERVISORY DEFENDANTS

The Supervisory Defendants seek judgment on the pleadings on the ground that Plaintiffs fail to allege any personal, individualized conduct by Patten or Searcy that violated Decedent's constitutional rights, and that Plaintiffs' policy, custom, failure-to-train, and failure-to-supervise theories are conclusory and cannot overcome qualified immunity. [ECF No. 91] at 4-22. The Court addresses these arguments in the sequence the Supervisory Defendants present them: first, the contention that Plaintiffs plead only supervisory status rather than individual conduct; second, the contention that Plaintiffs fail to allege an unconstitutional policy or custom; third, the contention that Plaintiffs fail to allege deliberate indifference, causation, and notice; and fourth, the contention that the law was not clearly established.

22

## 1. Plaintiffs Assert Colorable Individual-Capacity Claims Against the Supervisory Defendants.

The Supervisory Defendants first contend that Plaintiffs' allegations "overwhelmingly concern supervisory status, policymaking authority, [and] official capacity conduct" rather than individualized conduct, and that qualified immunity applies only to individual-capacity claims. [ECF No. 91] at 4–5. The Court agrees with the legal premise but not its consequence. It is true that § 1983 imposes no vicarious liability and that a supervisor cannot be held liable solely because he oversees a subordinate who commits a constitutional violation. See Iqbal, 556 U.S. at 676–77. Despite this, a supervisory official may be held individually liable under § 1983 where he "implements unconstitutional policies that causally result in the constitutional injury," or where his own failure to adopt adequate policies or to train and supervise reflects deliberate indifference that causes the injury. Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011). Such liability is a form of direct, not vicarious, liability: it rests on the supervisor's own culpable conduct.

Plaintiffs allege precisely such conduct. They allege that Patten, as the Jail's final policymaker, and Searcy, as its administrator, maintained a custom under which pretrial detainees, particularly those perceived to have mental conditions, were not afforded medical care during the overnight shift, and that they

23

failed to remedy documented deficiencies in the Jail's capacity to deliver medical care. [ECF No. 23] at 24–28. These are allegations of the Supervisory Defendants' own policymaking and supervisory conduct, asserted against them individually. That the same conduct might also support a claim against Adams County does not convert the individual-capacity theory into an official-capacity one.

## 2. Plaintiffs Plausibly Allege an Unconstitutional Policy or Custom.

The Supervisory Defendants contend that Plaintiffs' policy and custom allegations are conclusory and rest on impermissible "information and belief" pleading. [ECF No. 91] at 8–12. The conditions-of-confinement framework of Shepherd governs this theory. Under Shepherd, a pretrial detainee may establish a constitutional violation by showing that a jail's rules and restrictions, or established policies or practices subjected her to conditions that were not reasonably related to a legitimate governmental objective and that caused a constitutional deprivation. See Shepherd, 591 F.3d at 454–55. A custom need not be formally adopted; an unwritten practice may constitute a policy where it is "so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

Plaintiffs allege more than conclusory labels. They allege a specific, operative practice: that detainees perceived to have mental conditions were not afforded medical care during the

24

overnight shift. [ECF No. 23] at 26. That allegation does not rest on speculation alone. It is corroborated by the recorded statements of the very officers on duty. Collins stated that officers were "not allowed to move people at nighttime," [ECF No. 23] at 21, and Robinson stated that he told Decedent she "would have to check with morning shift because [the nightshift officers] could not get her a doctor that night." Id. at 22. These statements are not describing a one-time lapse but an understood limitation on the availability of overnight medical care. This supplies the "'sufficiently extended or pervasive'" character of a custom rather than an isolated act. Shepherd, 591 F.3d at 452 (quoting Hare, 74 F.3d at 645).

### 3. Plaintiffs Plausibly Allege Deliberate Indifference, Causation and Notice.

The Supervisory Defendants' central argument is that Plaintiffs fail to allege deliberate indifference because they identify no pattern of prior similar violations that would have placed Patten or Searcy on notice that the Jail's policies would produce a constitutional injury. [ECF No. 91] at 10-11; [ECF No. 97] at 2-5. Ordinarily, proof of deliberate indifference in this context requires "a pattern of similar violations," and the inadequacy of the challenged policy must be "obvious and obviously likely to result in a constitutional violation." Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 381-

25

83 (5th Cir. 2005) (citation omitted). Plaintiffs do not allege a pattern of prior in-custody deaths. But a pattern is not the only route to deliberate indifference.

The Supreme Court has recognized that, in a narrow class of cases, the unconstitutional consequences of a supervisor's failure to act may be "so obvious" that deliberate indifference can be established without a pattern of prior violations. City of Canton v. Harris, 489 U.S. 378, 390 (1989); Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 409 (1997). The Fifth Circuit has applied this single-incident principle where the risk of a constitutional violation was a "'highly predictable consequence'" of the supervisor's failure. Littell v. Houston Indep. Sch. Dist., 894 F.3d 616, 624–25 (5th Cir. 2018) (quoting Brown, 520 U.S. at 409).

This is such a case because Plaintiffs allege not a generalized awareness of imperfection, but specific and documented notice. In March 2022, some seventeen months before Decedent's death, Patten personally commissioned an Operational Assessment of the Adams County Jail. [ECF No. 23] at 23; see Operational Assessment [ECF No. 23-5]. That assessment found that "there are still no medical staff on duty at any time in the jail" and warned, in terms, that the "utter lack of in-house medical staff" would leave "medical decisions/diagnoses to unqualified detention officers." [ECF No. 23-5] at 11. It concluded that "operations in

26

the current facility are untenable." Id. at 19. Plaintiffs allege that none of these deficiencies was corrected before Decedent died of a condition that unqualified detention officers failed to recognize. [ECF No. 23] at 24. A written, professional warning solicited by the policymaker himself that a facility cannot reliably deliver medical care to detainees, left unremedied until the precise risk it identified materialized, is the paradigm of an "obvious" risk. City of Canton, 489 U.S. at 390. The Assessment supplies both the notice the pattern requirement ordinarily serves to establish and the causal link between the Supervisory Defendants' inaction and Decedent's death.

Brown v. Callahan, 623 F.3d 249 (5th Cir. 2010), on which the Supervisory Defendants rely, [ECF No. 97] at 5–8, does not compel a contrary result; it confirms the analysis. Brown held that a sheriff was entitled to qualified immunity on a supervisory theory arising from the death of a pretrial detainee who died of a gastrointestinal hemorrhage after vomiting blood—facts materially parallel to those here. Brown, 623 F.3d at 251–52. The dispositive deficiency in Brown, however, was the absence of notice. The sheriff's knowledge extended only to the fact that the jail's contract physician "gripe[d] all the time" and was unpleasant toward the nursing staff; there was no prior incident and no documented connection between that friction and any actual denial of care. Id. at 254–56.

Here, the notice that <u>Brown</u> found missing is alleged in concrete, documentary form: a written assessment, commissioned by Patten himself, expressly identifying the absence of medical staff and warning that the resulting reliance on "unqualified detention officers" endangered detainees. Where <u>Brown</u> turned on a supervisor's generalized awareness of a subordinate's poor temperament, the allegations here describe a supervisor's specific, written, and unremedied notice of the very deficiency that caused the death. <u>Brown</u> is thus the factual mirror image of this case, and its reasoning supports the denial of immunity. Additionally, in <u>Brown</u> there was medical care available to the decedent, while here there was none.  The Supervisory Defendats cite to case law that cuts against the very argument they are attempting to make.

The Supervisory Defendants' remaining arguments, that Plaintiffs' failure-to-train and failure-to-supervise theories are conclusory, [ECF No. 91] at 12–16, and that Plaintiffs improperly "lump" the Defendants together, do not alter the conclusion. [ECF No. 91] at 9. Plaintiffs' conditions-of-confinement theory does not depend on identifying a discrete defective training module. Instead, it depends on the alleged custom of withholding overnight medical care and the documented notice that the facility could not deliver such care. Those allegations are pleaded with sufficient

specificity to raise Plaintiffs' right to relief above the speculative level. Twombly, 550 U.S. at 555.

### 4. Decedent's Right was Clearly Established.

Finally, the Supervisory Defendants contend that Plaintiffs identify no clearly established law placing the unlawfulness of their conduct beyond debate. [ECF No. 97] at 5. As of August 2023, two propositions were clearly established. First, it was clearly established that a pretrial detainee has a Fourteenth Amendment right to adequate medical care. Hare, 74 F.3d at 650. Second, a supervisor who is deliberately indifferent to a known and obvious risk that his facility will deny such care may be held liable for the resulting injury. See Porter, 659 F.3d at 446-47; Estate of Davis, 406 F.3d at 381. A supervisor who lacks notice of deficient medical care retains immunity. Brown, 623 F.3d at 254-56. As alleged here, a supervisor who possesses specific, documented notice of that deficiency and fails to act, does not retain immunity. A reasonable official in Patten's or Searcy's position, having commissioned and received a written assessment warning that the Jail could not deliver medical care to detainees, would have understood that leaving that condition unremedied for seventeen months violated the detainees' clearly established rights.

The Supervisory Defendants are therefore not entitled to qualified immunity at the pleading stage. Accordingly, their Motion is hereby denied.

29

## VI.    CONCLUSION

Taken in the light most favorable to Plaintiffs, the well-pleaded allegations of the First Amended Complaint satisfy both prongs of the qualified-immunity analysis as to each of the five remaining individual Defendants. The episodic-act allegations against Officers Williams, Collins, and Robinson plausibly establish subjective deliberate indifference to Decedent's serious medical needs, and the conditions-of-confinement allegations against Sheriff Patten and Chief Searcy plausibly establish deliberate indifference to a known and documented risk that the Adams County Jail could not deliver constitutionally adequate medical care. Because the rights at issue were clearly established in this Circuit as of August 2023, qualified immunity does not shield any of these Defendants at the pleading stage.

Accordingly, IT IS HEREBY ORDERED that the Officer Defendants' Motion for Judgment on the Pleadings [ECF No. 43] is GRANTED IN PART and DENIED IN PART.

The Motion is GRANTED as to Plaintiffs' state-law claims for negligence and gross negligence against Officers Williams, Collins, and Robinson, which are DISMISSED, and as to Plaintiffs' official-capacity claims against those Defendants, which are DISMISSED as duplicative.

The Motion is DENIED in all other respects.

30

IT IS FURTHER ORDERED that the Supervisory Defendants' Motion for Judgment on the Pleadings Based on Qualified Immunity [ECF No. 90] is DENIED.

SO ORDERED, this the 27th day of July, 2026.

/s/ David C. Bramlette III
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE